REBECCA WILLIFORD – CA BAR NO. 269977
rwilliford@dralegal.org
MEREDITH J. WEAVER – CA BAR NO. 299328
mweaver@dralegal.org
EMILY SEELENFREUND – CA BAR NO. 804482 (Registered Legal Services Attorney)
eseelenfreund@dralegal.org
Disability Rights Advocates
2001 Center Street, 4th Floor
Berkeley, California  94704-1204
Tel:     (510) 665-8644
Fax:     (510) 665-8511

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND/SAN FRANCISCO DIVISION

| | |
|---|---|
| TIFFANY RUFFA, KATHRYN CANFIELD, and ISIDORE NIYONGABO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOCIETY FOR HUMAN RESOURCE MANAGEMENT,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION – Title III of the Americans with Disabilities Act; the Unruh Civil Rights Act**<br><br>**INDIVIDUAL ACTION – the Unruh Civil Rights Act** |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## **INTRODUCTION**

1.   For years, the Society for Human Resource Management ("SHRM") has denied Plaintiffs Tiffany Ruffa, Kathryn Canfield, and Isidore Niyongabo (collectively "Plaintiffs") and other d/Deaf[1] human resource ("HR") professionals equal access to the certifications, educational services, and other benefits it makes available to its members and customers without disabilities. SHRM has failed to provide Plaintiffs and other d/Deaf HR professionals access to sign language interpreters, closed captioning, and timely transcripts of courses and events, as well as other necessary forms of effective communication.

2.   With over 300,000 members in 165 countries, SHRM describes itself as "the foremost expert, convener and thought leader on issues impacting today's evolving workplaces."[2] SHRM offers widely utilized certifications for HR professionals, which may be obtained through examinations and must be maintained through re-examination or continuing education. For many HR professionals, these certifications are critical for career advancement and skill development. Indeed, SHRM states that over 5,000 employers seek to employ SHRM credential holders each month.[3] SHRM also offers courses to help individuals prepare for SHRM certification examinations as well as a variety of other educational programming, most of which individuals can use to earn credits toward SHRM recertification.

3.   SHRM offers in-person as well as online content. Membership is open to the public, and members receive discounts on public-facing content such as exams and courses, as well as access to some members-only programming like podcasts and webcasts.

4.   While SHRM's "mission is to empower people and workplaces by advancing HR practices and by maximizing human potential,"[4] the inaccessibility of its programs denies d/Deaf

---

[1] The capitalized word "Deaf" refers to a person who is both deaf and identifies as a member of Deaf Culture; a linguistic minority with its own language (signed language) and culture. The lowercase "deaf" refers to the larger group of people with severe-profound hearing loss. Plaintiffs use d/Deaf to encompass the broader group of individuals with severe-profound hearing loss while also recognizing the Deaf identity.

[2] *About SHRM*, SHRM, https://www.shrm.org/about-shrm (last visited July 19, 2021).

[3] *Why Seek SHRM Certification?*, SHRM, https://www.shrm.org/certification/about/Pages/why-seek-shrm-certification.aspx (last visited July 19, 2021).

[4] *About SHRM*, SHRM, https://www.shrm.org/about-shrm (last visited July 19, 2021).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

members and customers full and equal access to the benefits and services it offers to those who are hearing. SHRM routinely fails to provide information about the accessibility of its programs on its website, or information about how to request accommodations. Plaintiffs are often unable to tell if SHRM's advertised in-person and virtual content will be offered in an accessible format, such as with closed captioning or live sign language interpretation.

5.     Plaintiffs' attempts to request accommodations have been met with denials, offers of accommodations that would not be adequate to provide access, and sometimes no response at all. Thus, Plaintiffs are unable to access SHRM content in a manner comparable to hearing people.

6.     SHRM's failure to provide access to its content to d/Deaf members and customers violates Title III of the Americans with Disabilities Act ("ADA") and California state civil rights law. Thus, Plaintiffs bring this civil-rights lawsuit against Defendant SHRM on behalf of themselves and a putative class of all other d/Deaf SHRM members and customers, as well as potential SHRM members and customers, nationwide who have been discriminated against on the basis of their deafness; and a putative subclass of all d/Deaf SHRM members and customers, as well as potential SHRM members and customers, in California who have been discriminated against on the basis of their deafness.

7.     Plaintiffs notified SHRM of these problems in October 2020 but were unable to obtain the commitments needed from SHRM to ensure that d/Deaf members and customers have equal access to SHRM programs and services, and d/Deaf HR professionals continue to face effective communication barriers in connection with SHRM programs. Plaintiffs were thus faced with no choice but to pursue their legal remedies in court.

## JURISDICTION AND VENUE

8.     This action is brought pursuant to the ADA, 42 U.S.C. § 12182, *et seq.* and the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.*

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for Plaintiffs' claims arising under the ADA.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for Plaintiffs' claims arising under the Unruh Civil Rights Act.

11.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because: (1) SHRM has "contacts . . . sufficient to subject it to personal jurisdiction" within this District and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

12.     Because the events and omissions giving rise to Plaintiffs' claims occurred in Alameda County, this case should be assigned to the Northern District's San Francisco division or its Oakland division. L.R. Civ. 3-2(c).

## PARTIES

13.     Plaintiff Tiffany Ruffa lives in Livermore, California. She has been an HR professional for more than fifteen years and has numerous professional certifications, including SHRM's Certified Professional certification, SHRM-CP. Ms. Ruffa founded her own HR consulting firm in the San Francisco Bay Area in 2019, HRBloom Co, a small business that provides HR services to other small Deaf-owned businesses around the United States and internationally. Ms. Ruffa has been a member of SHRM for more than four years. She is Deaf and has been since birth. Her first and primary language is American Sign Language ("ASL"). She is fourth-generation Deaf and a fourth-generation ASL user, as her brother, parents, uncle, grandparents, and great grandparents are also Deaf and use ASL.

14.     Plaintiff Kathryn Canfield lives in Fremont, California. She is a Staff Services Manager for California School for the Deaf ("CSD"). She started working in human resources in 2012. Her previous role at CSD, which she held for two years, involved workers' compensation issues, salary setting, and personnel forms. She has been an SHRM member since 2017 and began using the SHRM website as a non-member several years prior to becoming a member. She received the SHRM-CP certification in 2019. Ms. Canfield also created her own consulting business, Canfield HR Consulting, in 2020. Ms. Canfield was born hearing but became Deaf at age 6. She attended both public school and schools for Deaf children for her primary education and received her undergraduate degree from Gallaudet University and a master's degree in

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Public Administration from National University with an emphasis on Human Resource Management. She is Deaf and her primary language is ASL.

15.     Plaintiff Isidore Niyongabo resides in Austin, Texas. He was recently named the Chief People Officer for The Learning Center for the Deaf in Framingham, Massachusetts, and as such will oversee all of the organization's HR functions, including managing the HR team, organizational culture, people strategy, and diversity and inclusion, as well as federal, state, and local compliance. He previously worked for Convo Communications for six years as an HR generalist, HR manager, HR director, and ultimately Director of Employee Relations. Mr. Niyongabo has a bachelor's degree from San Diego State University and a master's degree from University of San Diego. He also has a certification in Strategic HR Leadership from Cornell University. Mr. Niyongabo has been an SHRM member since 2015 and received SHRM's Senior Certified Professional certification, SHRM-SCP, in 2019. He is Deaf and his primary language is ASL.

16.     Defendant SHRM is the largest professional human resources membership association in the world. It is a 501(c)(6) non-profit organization with headquarters in Alexandria, Virginia.

## FACTUAL ALLEGATIONS

17.     SHRM provides products and services in-person and virtually to both members and non-members around the country. Members receive discounts on SHRM's products and services, as well as access to tools, resources, information, and networks valuable to their work as HR professionals.

18.     SHRM Membership is open to the public and costs $219 annually.

19.     There are more than 575 affiliated SHRM chapters around the United States.

20.     SHRM's consolidated total revenue, including affiliates and subsidiaries, was over $168 million in 2019.

### *Certification Programs*

21.     SHRM offers certification programs to members and non-members, who can become Certified Professionals (SHRM-CP) or Senior Certified Professionals (SHRM-SCP).

DocuSign Envelope ID: 9778F199-7C04-4893-8D72-A3D55F09C4C1

22.      In 2018, 15.4% of HR professionals surveyed by the company PayScale were SHRM Certified Professionals, and 5.3% were Senior Certified Professionals. PayScale also estimated that the SHRM-CP was responsible for a 3.9% boost in pay, and the SHRM-SCP responsible for a 5.7% boost.[5]

23.      SHRM's certification exams can be taken in-person or remotely.

24.      SHRM offers self-study as well as instructor-led courses for professionals to prepare for the certification exams. These courses can be taken either virtually or in-person.

25.      SHRM members receive discounts on both the certification exam and the preparatory courses. For example, a 3-week "Virtual SHRM-CP Power Prep" course is available for $995 for members and $1,270 for non-members.[6]

26.      To sustain an SHRM-CP or SHRM-SCP certification, members must recertify every three years. This entails either retaking the certification exam or earning sixty professional development credits ("PDCs"), which are calculated at a rate of one credit per hour of qualifying programming. The professional must also pay the recertification fee of $100 for members or $150 for non-members.

27.      Certified professionals can earn credits through SHRM's own course and program offerings or through external programs. For example, SHRM's and its affiliates' conferences are worth 12 PDCs; SHRM's education programs are worth 7.5 to 36 PDCs; college or university courses are worth 10 or more PDCs; and SHRM's free hour-long webcasts are worth 1 PDC. SHRM also offers *SHRM On Demand*, a subscription-based service to access hundreds of recorded sessions from major SHRM conferences through which certified professionals can earn some or all of their PDCs. SHRM's podcast series, "Honest HR," is worth 1-2 PDCs per podcast. Professionals can also earn PDCs through books and local SHRM-affiliated chapter programming.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

[5] *The 2018 Market Value of HR Certifications for HR Pros: U.S. Edition*, PayScale, 7, 11 (2018), https://www.payscale.com/content/whitepaper/US-HR-Certification.pdf.

[6] *SHRM-CP Certification Power Preparation*, THE SHRMSTORE, https://store.shrm.org/SHRM-CP-Certification-Power-Preparation (last visited July 19, 2021).

DocuSign Envelope ID: 9778F199-7C04-4393-8D72-A3D55F09C4C1

28. SHRM also offers specialty credentials, such as the Inclusive Workplace Culture Specialty Credential and the California Law HR Specialty Credential, which are worth 17-26 PDCs.

*SHRM Educational Programming*

29. SHRM offers in-person programming to members and non-members around the country. For example, in 2020 SHRM's scheduled in-person programming included: SHRM People Analytics in Seattle, Washington; WorkVision 2020 in Scottsdale, Arizona; Advocacy@Work in Washington, D.C.; and SHRM Annual Conference & Exposition in San Diego, California. In 2021, SHRM has the following in-person programming scheduled: SHRM Annual Conference & Exposition in Las Vegas, Nevada; SHRM Talent Conference & Expo in Las Vegas, Nevada; and Inclusion 2021 in Austin, Texas.

30. SHRM also offers extensive live and on-demand online programming. In addition to options for virtual participation in the events described in the preceding paragraph, SHRM also offers live online programs such as Investing in People with Data-Driven Solutions (June 10-11, 2021) and Workplace Communications: Using Storytelling to Elevate Credibility (June 25, 2021).

31. SHRM offers On Demand Webcasts on topics including talent acquisition and retention; employment law and regulation; performance management; diversity, equity, and inclusion; and more. Most webcasts are available for 3-4 months after their live broadcast.[7]

32. SHRM's spring 2021 online offerings include a special focus on the COVID-19 Crisis and Return to Work.

*SHRM Fails to Make its Certification, Educational Programming, and Resources Accessible to Deaf Members*

33. In order for SHRM members and customers who are d/Deaf to access SHRM's programs, the programs must be provided via a method of communication that is effective,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

[7] *On Demand Webcasts*, SHRM, https://www.shrm.org/LearningAndCareer/learning/webcasts/Pages/archive.aspx (last visited July 19, 2021).

DocuSign Envelope ID: 9778F199-7C04-4393-8D72-A3D55F00C4C1

which may include sign language interpretation, captioning, transcripts, or other forms of communication.

34. Depending on the type of content, a d/Deaf participant may need additional accommodations in order to obtain the same opportunity as a hearing person to access and benefit from the program. For example, while live interpretation may provide effective communication during an event, HR educational content frequently entails technical terms that are important to understand and communicate with complete accuracy, so a transcript may also be necessary to provide the same benefit of the educational content. In addition, a person who is watching live interpretation or reading closed captioning during an event may not be able to take simultaneous notes and may need a note-taker or a transcript of the material in order to have the same access as a hearing person. There are other instances where a transcript alone will not suffice and live captioning is necessary to allow individuals to simultaneously view presenters' words alongside their facial expressions and body language.

35. SHRM has routinely failed to provide effective communication to its d/Deaf members and potential members, including Plaintiffs.

36. SHRM's website is one of the primary ways members and customers obtain information about certification programs, educational programs and other SHRM events. Although the website contains numerous posts and pages regarding accessibility from an HR perspective, including a sample ADA reasonable accommodation request form for employees, the website has no accessibility policy of its own. Nor does the site have a page dedicated to accommodations for SHRM services or contact information for an ADA coordinator. And, until recently, SHRM provided no process through which participants could request such accommodation for any programming, and still only references accommodations in limited circumstances.

37. Additionally, SHRM does not provide information about the accessibility of the vast majority of its on-demand offerings, so Plaintiffs and class members are unable to identify from the program and course listings on the website whether those offerings will be accessible to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DocuSign Envelope ID: 9778F199-ZC04-4393-8D72-A3D55F00C4C1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  them. Because of this, Plaintiffs and class members cannot register for a program or course with
2  confidence that they will be able to access the content.

3  38.   In the absence of available information about the accessibility of much of
4  SHRM's programming and an adequate accommodations process, Plaintiffs have attempted ad
5  hoc solutions by submitting requests through a generic online contact form and to various SHRM
6  email addresses.

7  39.   Plaintiffs have often received no confirmation or record of requests submitted
8  through the online contact form. And when customer service representatives have responded,
9  they and those to whom such requests were elevated, demonstrated a lack of knowledge
10 regarding the types of accommodations that d/Deaf individuals may require. As a result,
11 Plaintiffs have missed programming, faced delays in certifications, or been forced to utilize
12 ineffective methods of communication to participate in or attend SHRM programming, among
13 other barriers.

14 Certification Programs and Courses

15 40.   Plaintiffs Niyongabo and Canfield have encountered barriers when trying to
16 access SHRM's certification programs and courses.

17 41.   Plaintiff Niyongabo reached out to SHRM in August 2017 regarding
18 inaccessibility of audio content within the SHRM Learning System, which he had paid to access
19 in order to prepare to take the SHRM-CP certification exam. He had not passed the June 2017
20 exam due to his inability to adequately use the Learning System because of the absence of sign
21 language interpretation or captioning. SHRM's Michelle Sparacino, Vice President of
22 Certification Services & Operations, responded to Mr. Niyongabo in September 2017 that
23 captioning was not yet available for the Learning System audio content, and offered to provide
24 transcripts instead along with a new subscription for 18 months to the 2017 Learning System and
25 a free retake of the exam for either the time period December 1, 2017 – February 15, 2018 or
26 May 1 – July 15, 2018. Mr. Niyongabo planned to re-take the exam in spring 2018. On
27 September 15, 2017, Ms. Sparacino sent Mr. Niyongabo several transcripts of Learning System
28

1  audio content but explained that the files might not be all the content, as she "was expecting it to
2  be longer."

3       42.    Unfortunately, the incomplete transcripts were not an adequate accommodation or
4  substitution for captioning within the Learning System. The transcripts constituted one long
5  block of text which was not divided by section or chapter. Mr. Niyongabo could not focus on
6  certain portions of the content without going through the entire transcript. While the audio
7  content within the Learning System has videos containing key information that often show up on
8  the exams, or tips on areas students should focus on, the transcript provided to Mr. Niyongabo
9  did not similarly highlight such helpful content. In addition, without captioning, Mr. Niyongabo
10  was not able to follow along with lectures that include visual content such as graphs and some
11  key infographics to help students understand concepts, such as the employee life cycle.

12       43.    With only a few months left in 2017 and some incomplete, unwieldy transcripts,
13  Mr. Niyongabo did not have enough time to prepare for the 2017 exam, and SHRM did not
14  provide him any transcripts of the 2018 content in the spring. Mr. Niyongabo was again unable
15  to pass the exam in July 2018 without captioning in the Learning System and missed a promotion
16  opportunity for which he was otherwise eligible.

17       44.    Mr. Niyongabo followed up with Ms. Sparacino in March 2019 to inquire whether
18  captioning was available within the Learning System and did not receive a response.

19       45.    Ultimately, Mr. Niyongabo signed up for an in-person, three-month certification
20  exam preparation course at the University of Texas Center for Professional Education, which
21  provided an interpreter for the course. This course cost Mr. Niyongabo approximately $1,500.

22       46.    Mr. Niyongabo then took the SHRM-SCP exam in May 2019. SHRM did not
23  waive the $300 test fees again.

24       47.    Mr. Niyongabo lost significant time preparing for the test multiple times and
25  traveling to in-person classes in order to obtain appropriate interpretation of the course content
26  which he could not access through SHRM directly.

27       48.    Additionally, Plaintiff Canfield has encountered multiple barriers and insufficient
28  information about accommodations regarding use of the SHRM Learning System. As a result,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    she studied on her own for the SHRM-CP certification in 2018 after being unable to determine

2    whether SHRM's training materials included captions for audio content.

3        <u>SHRM Educational Programming, Webinars, and Web Events</u>

4        49.    Plaintiffs have all encountered barriers when attempting to utilize SHRM's online

5    educational programming.

6        50.    In 2019, Plaintiff Canfield did not utilize the offered benefits of her SHRM

7    membership due to the lack of information about accommodations on the SHRM website and on

8    informational and promotional materials.

9        51.    When faced with the need to obtain PDCs to maintain her SHRM-CP

10   certification, in May 2020, Ms. Canfield signed up for a webinar focusing on recruitment.  The

11   confirmation email indicated that questions could be directed to webcast@shrm.org, however,

12   when Ms. Canfield emailed this address regarding her requested accommodations, the email

13   bounced back as undeliverable. She could not find any other instructions or information for

14   requesting accommodations for the webinar but reached out to the local Northern California

15   SHRM chapter for assistance as a last attempt. Unfortunately, the Northern California chapter

16   was not able to assist.

17       52.    As Ms. Canfield continued to grow her consulting business in 2020, she depended

18   more on SHRM for its available information and resources but found that they were not always

19   accessible. For instance, a video on ADA Reasonable Accommodation Best Practices was not

20   captioned.

21       53.    On July 19, 2020, Ms. Canfield signed up for SHRM Northern California's

22   September 2020 program, HR Reimagined. Immediately after paying, she emailed and requested

23   accommodations through the Northern California SHRM chapter. She did not receive a

24   confirmation that captioning would be available until the week prior to the conference, and even

25   then, she did not have access to the networking portions of the program because captioning was

26   only provided for the course sessions themselves and not for other portions of the event.

27       54.    On January 24, 2021, Ms. Canfield registered for an SHRM course called

28   "Leading Workplace Investigations," scheduled to take place beginning March 15, 2021. The

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

event was worth 13.5 PDCs and qualified for the SHRM Workplace Investigations Specialty Credential. On March 1, she received an email about the upcoming course, but it did not include any information about available accommodations or how to request them. Ms. Canfield attempted to request accommodations by emailing shrmconfsem@shrm.org the same day. On March 2, she received an email from SHRM representative Ignacio Rodriguez acknowledging her request. By March 15, 2021, when the course was due to begin, she had received no other response from SHRM, and no substantive response addressing her accommodations request. When Ms. Canfield logged into the course there was no interpretation or closed captioning available. She followed up again to Ignacio Rodriguez's response to her accommodations request, and subsequently received several emails between March 16 and March 19 from various SHRM representatives regarding her request. One, from SHRM's Manager of Educational Programs Riley Kishkunas, apologized for "the delay that occurred in having this information provided to you along with these accommodations not being met." Mr. Kishkunas wrote that "[o]ffering interpretation services is our consistent accommodation," but that SHRM "currently ha[s] not tested the captioning/transcript in our current technology." He recommended that Ms. Canfield enroll in "another offering of this program." Ms. Canfield also discussed the request with SHRM's Director of Educational Programs Liz Lacey through a video relay service telephone call. During this conversation, Ms. Lacey at first stated that future workshops would be recorded, sent to an interpretation company to provide interpretation, and then made available to Ms. Canfield after the fact; but she subsequently stated there would be live remote interpretation. Ultimately, Ms. Canfield chose to re-register for the course and credential, and was provided a live remote interpreter, but only after enduring a two-month delay due to the lengthy process of pursuing what should have been a simple request.

55.     In late 2020, SHRM began offering a series for members called "Tune in Tuesdays," a "brand-new digital series of interactive episodes airing live the second Tuesday of each month"[8] in anticipation of the 2021 SHRM annual conference. These are not just webcasts,

---

[8] *Tune in Tuesdays*, SHRM21, https://tuneintuesdays.shrm.org/?_ga=2.183244837.229450629.1622654208-558687534.1622654208 (last visited July 19, 2021).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   but rather interactive events where attendees get the opportunity to network with peers through

2   live chats and contribute to the conversation in real time through interactive polling and Q&As.

3   Attending an episode of Tune in Tuesday provides participants with 1 PDC.

4        56.    The Tune in Tuesdays registration page provides no information about

5   accessibility, nor any way to request accommodations. Plaintiffs have attempted to attend these

6   events but have not been provided adequate accommodations and cannot access them. They have

7   attempted to request accommodations through SHRM's contact form since January 2021.

8        57.    Plaintiff Canfield attended Tune in Tuesday events on February 9, 2021 and

9   March 9, 2021. There was no process through which she could request accommodations in

10   advance. During each episode, she requested closed captions via the live Q&A feature within the

11   webcast platform. SHRM did not provide closed captioning during the webcast.

12        58.    Ms. Ruffa has also faced barriers attempting to access the benefits of Tune in

13   Tuesdays. During the March 2021 Tune in Tuesdays event, SHRM's Chief of Staff and Head of

14   Government Affairs & Corporate Secretary Emily Dickens interviewed Khadijah Sharif-

15   Drinkard and Elke Suber about transitioning in, through, and out of workplaces. More than 1,500

16   people joined the live conversation. Ms. Ruffa wrote, "Hi, I'm looking for the closed captions,"

17   and moderator Liz Petersen responded, "Tiffany we do not have them during this session

18   immediately, but there will be a transcript with the recording on the website at this same place by

19   next week." Afterwards, Ms. Ruffa responded to the email announcing the March 9 program,

20   explaining that it was inaccessible and requesting that future live interviews be made accessible.

21   No one from SHRM responded to this request.

22        59.    Providing only a transcript one week after the live event precludes Plaintiffs from

23   participating in the live conversation, asking questions that may be answered by the presenters,

24   and accessing the information provided in the webinar in a timely fashion. In addition, providing

25   only delayed transcripts requires Plaintiffs to spend twice as long attending the event as other HR

26   professionals—they must watch the recording, even though they cannot access what is being

27   said, in order to obtain their PDC, and then go back a week later and read the transcript in order

28   to actually receive the educational benefit of attending the event and gain the information

DocuSign Envelope ID: 9778F199-7C04-4393-8D72-A3055D99C4C1

provided. In addition, an after-the-fact transcript prevents Plaintiffs from being able to view the event and associate the presenters' words side by side with their facial expressions and body language, which are critical aspects of communication that Plaintiffs would be able to access with live captioning or sign language interpretation. If Plaintiffs review only the transcript after the fact, they may miss the opportunity to obtain the PDC because it may have expired.

60.     In April 2021, three months after Plaintiffs first began requesting accommodations for Tune in Tuesdays, SHRM began providing Automatic Speech Recognition ("ASR") captions during the episodes. The ASR captions contain numerous errors, some of which are obvious from the caption text but many of which Plaintiffs and members of the class may have no way to know are present. The National Deaf Center on Postsecondary Outcomes ("NDC") has analyzed ASR's impact on d/Deaf students and notes that ASR is "not comparable to what speech-to-text professionals provide" and that "deaf students are . . . forced to decipher errors in ASR captions, without access to the original source of information."[9] NDC explains that factors "such as accents, female speakers, multiple or overlapping speakers in group discussion, and audio distortion" worsen ASR's accuracy and that ASR typically does not contain grammar or punctuation markers, speaker identification, accurate technical vocabulary, or homonym differentiation.[10] Defendant's use of ASR deprives Plaintiffs of equal access because they must undertake the difficult and distracting work of attempting to decipher ASR while also absorbing the material and engaging with the interactive features. Plaintiffs' hearing colleagues and counterparts do no not face this obstacle. Further, the inaccuracy of the information provided limits its utility and places d/Deaf HR professionals at risk of relying on inaccurate information in their professional capacity.

61.     Plaintiff Niyongabo registered for a member-exclusive webcast "CEO of Pfizer Shares What You Need to Know" on March 15, 2021, promising attendees would learn the latest

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

---

[9] *Auto Captions and Deaf Students: Why Automatic Speech Recognition Technology Is Not the Answer (Yet)*, National Deaf Center on Postsecondary Outcomes (Oct. 27, 2020), https://www.nationaldeafcenter.org/news/auto-captions-and-deaf-students-why-automatic-speech-recognition-technology-not-answer-yet.

[10] *Id.*

on COVID-19 "[v]accine development and distribution," "[t]he future of remote and hybrid work," and "[w]hat employers can do if workers refuse the vaccine." The webcast was scheduled to take place on March 16, 2021 and was worth 1 PDC towards SHRM-CP or SHRM-SCP recertification. During the registration process, there was no way for Mr. Niyongabo to identify whether the webcast would include closed captioning, nor was there any way for him to request accommodations.

62.     Plaintiff Ruffa signed up for the same webcast. She was not able to access information about accessibility, nor request accommodations during registration. Ms. Ruffa emailed customer-care@help.shrm.org and shrm@shrm.org on March 16 at the beginning of the business day and asked about accessibility in the form of closed captions and a transcript. She did not receive a response. When the event began, there were no captions. Ms. Ruffa promptly submitted an inquiry in the program's live Q&A box about the availability of captions, but did not receive a response.

63.     On April 8, 2021—more than two weeks after the event—Ms. Ruffa received a response to her March 16 email inquiry, stating that "the webinar has already the close caption option. [sic]" The response contained a forwarded email thread showing that various higher-level SHRM personnel had failed to respond to the internal "escalation" of the request. That a customer service representative needed to "escalate" a simple accommodation request, and that the individuals to whom he escalated it failed to respond, demonstrates that SHRM lacks a process for adequately and timely providing accommodations. Ms. Ruffa attempted to access the webinar after receiving SHRM's response, and it did not in fact have captions.

64.     Defendant's failure to provide captions or other effective communication during the webinar excluded Plaintiffs Niyongabo and Ruffa from the ability to obtain time-sensitive and critical information regarding the COVID-19 vaccine and its impact on the workplace—information they, like the many hearing HR professionals who signed up for the webcast, require in order to be able to do their jobs effectively.

65.     On April 2, 2021, Ms. Ruffa registered for an April 13, 2021 webcast called "Create Your Own Employee Journey Map." The event was worth 1 PDC. She sent an email to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   customer-care@help.shrm.org the same day, requesting closed captions and a transcript. She

2   received no response until April 6, when she was informed by Customer Experience

3   representative Ignacio Rodriguez that he would "investigate" her request for accommodations.

4   Less than thirty minutes later, he responded again and stated: "[U]nfortunately, we are not able

5   to provide captioning/transcripts for these particular webcasts at this time.  However, we are

6   always continuing to explore options to improve the Create Your Own Employee Journey Map

7   webcast experience for all of our members, and we certainly appreciate your inquiry."

8   Mr. Rodriguez then directed Ms. Ruffa, if she needed further assistance, to dial an 800 number

9   and select option 3, or to "email us at https://shrm.org/about-shrm/Pages/Ask-A-Question.aspx."

10          66.     In June 2021, Ms. Ruffa registered and paid for an SHRM program called

11   "Getting Talent Back to Work Certification," however there were no closed captions or transcript

12   available. On June 12, 2021, Ms. Ruffa emailed elearning@shrm.org to request these

13   accommodations. Two days later, she received a response from Cintia Roman, a member of

14   SHRM's Customer Experience team, indicating that because "this is a SHRM's foundation

15   class" Ms. Ruffa would need to contact SHRMFOUNDATION@SHRM.ORG. Ms. Ruffa then

16   promptly emailed the referral address and received a response four days later, on June 18, from

17   Elizabeth Kohm, Sr. Specialist in Engagement and Philanthropy. Ms. Kohm apologized for her

18   "delay in responding" noting that "it has been a busy week and [she] was out of pocket for part

19   of it on top of that." She represented that she had opened a ticket on "the closed captions issue"

20   but could provide transcripts as she was awaiting resolution, however she did not provide the

21   transcripts. Ms. Ruffa followed up again on July 7; she received a response stating that

22   Ms. Kohm was on vacation and asking again if Ms. Ruffa wanted her to send transcripts.

23   Ms. Ruffa repeated her request for closed captions and transcripts, explaining that transcripts

24   alone are not adequate accommodations and received a response the morning of July 19

25   indicating that Ms. Kohm was now back from vacation and would "check [the] status of the open

26   ticket." However, Ms. Kohm has still not provided any transcripts and the course does not have

27   closed captions.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

67.    On June 22, 2021, Ms. Ruffa registered for an SHRM program called "The Future of Global Mobility: Beyond the Pandemic", which had been previously recorded on June 15, 2021. She attempted to view this program the same day, but there were no closed captions available in the viewing platform, nor was there a transcript available. The same day, Ms. Ruffa emailed webcasts@shrm.org, the contact listed in the confirmation email for those with questions, to request closed captions. As of close of business on July 19, Ms. Ruffa had not received a response.

68.    On June 22, 2021, Ms. Ruffa registered for an SHRM program called "2021 SHRM Government Affairs CLA Webcast Q2" to be held on June 29, 2021. The same day, she emailed Meredith Nethercutt, the contact listed in the confirmation email for those with questions, and requested closed captions and a transcript for the webinar. On June 25, 2021, Ms. Nethercutt responded, stating that "our current system only allows for CC post-live event." Ms. Ruffa thus does not have access to the interactive aspects of live webcasts and is at a disadvantage in receiving time sensitive HR information.

<u>In-Person Conferences and Events</u>

69.    Plaintiff Ruffa experienced barriers when seeking effective communication at SHRM in-person events.

70.    SHRM hosts in-person conferences and events around the country.

71.    SHRM fails to provide adequate access to sign language interpretation and other accommodations for people who are d/Deaf at these events. For example, Plaintiff Ruffa submitted a request on January 26, 2020 for sign language interpretation at SHRM's annual conference, which was at that time planned for June 2020 in San Diego at the San Diego Convention Center, and for which she would have received PDC towards her recertification. She received an email stating that "SHRM has received your request for assistance" but with no details about the request. A "Customer Experience Representative" responded four days later from the email address customer-care@help.shrm.org as follows: "I'm afraid, at the moment we do not offer accommodations for conference attendees. Nevertheless, we are looking to have couple of on-site interpreters, which might include sign language interpreters. But for now I'll

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

suggest you keep an eye out on the SHRM conference site for updates." Ms. Ruffa responded on the same thread, asking to speak with someone who could help facilitate her request. The representative directed her to email shrmconfsem@shrm.org. Ms. Ruffa was not provided any means to track the status of her request.

72.     Ms. Ruffa emailed that address along with the original customer care email address on February 1, 2020, requesting accommodations at the conference in San Diego. By February 7, she still had not received a response and followed up again. The representative responded later that day, informing her that her request "ha[d] been escalated for review" and that she would "be notified as soon as a decision has been made." By February 26, Ms. Ruffa had not received any additional communication and sent another email to both SHRM addresses, explaining that she registered for the conference and had booked her flight and hotel and would like the interpreters' information in order to arrange meeting them at the conference. By March 10, 2020, Ms. Ruffa still had not received any response and decided to try to find an outside agency who could provide an interpreter.

73.     Although the 2020 Annual Conference, for which SHRM denied Ms. Ruffa in-person interpretation, was cancelled because of the COVID-19 pandemic, Plaintiffs are concerned that, once they are again able to attend in-person conferences and events operated by SHRM—such as the SHRM Annual Conference & Exposition scheduled to take place in September 2021 at the Las Vegas Convention Center and the Inclusion 2021 conference scheduled to take place in October 2021 at the JW Marriott in Austin, Texas—they will be similarly denied accommodations.

## CLASS ALLEGATIONS

74.     Plaintiffs' experiences are examples of an ongoing, systemic pattern of discrimination by SHRM against individuals who are d/Deaf.

75.     Plaintiffs seek certification of the following nationwide class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all individuals in the United States who are d/Deaf and are currently or will be members or customers of SHRM" ("the ADA Class").

DocuSign Envelope ID: 9778F199-7C04-4393-8D72-A3055FD9C4C1

76.     Plaintiffs seek only injunctive relief on behalf of the ADA Class.

77.     Each Plaintiff and member of the proposed ADA Class is a "qualified person with a disability" pursuant to the ADA, as alleged herein.

78.     Plaintiffs Ruffa and Canfield seek certification of the following subclass pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all individuals in California who are d/Deaf and are currently or will be members or customers of SHRM" ("the Unruh Subclass").

79.     Plaintiffs Ruffa and Canfield seek only injunctive relief on behalf of the Unruh Subclass.

80.     Plaintiffs Ruffa and Canfield and each member of the proposed Unruh Subclass is a "person with a disability" pursuant the Unruh Civil Rights Act, as alleged herein.

81.     The persons in each class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

82.     While the exact number of class members in each class is unknown to Plaintiffs at this time, the U.S. Bureau of Labor Statistics estimates that in May 2020 approximately 647,810 individuals were employed as HR Specialists nationwide, and 75,340 individuals were employed as HR Specialists in California.[11] According to the American Community Survey, 2.0 % of Americans between the ages of 18 and 64 and 1.5% of Californians between the ages of 18 and 64 reported having a hearing difficulty.[12] Thus, one would expect over 12,000 HR Specialists nationwide and over 1,000 HR Specialists in California to have hearing difficulties. The proposed class is thus sufficiently numerous such that joinder of all members is impracticable.

---

[11] *Human Resource Specialists*, U.S. Bureau of Labor Statistics, www.bls.gov/oes/current/oes131071.htm#st (Mar. 31, 2021).

[12] 2019 American Community Survey: 5-year estimates, Table ID S1810, https://data.census.gov/cedsci/table?q=disability&g=0100000US_0400000US06&tid=ACSST5Y2019.S1810&hidePreview=true (last visited July 19, 2021). The ACS reports a person as having a hearing difficulty if they answer yes to the question: "Is this person deaf or does he/she have serious difficulty hearing?" See U.S. Dep't of Com., ACS Questionnaire Informational Copy 9 (2019), available at https://www2.census.gov/programs-surveys/acs/methodology/questionnaires/2019/quest19.pdf.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

83.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented, in that they are individuals who are d/Deaf and who have been harmed by SHRM's (a) failure to ensure its professional certification exams and educational and other programming and events, are accessible to d/Deaf individuals and (b) failure to provide equal access to its services and accommodations.

84.     Common questions of law and fact predominate, including questions raised by Plaintiffs' allegations that Defendant's failure to provide accessible programs and services and effective communication for d/Deaf persons violates state and federal anti-discrimination laws.

85.     The claims of the Plaintiffs are typical of the claims of the proposed class and subclass as a whole. Plaintiffs, similar to members of the proposed class and subclass, have been and continue to be denied access to SHRM's courses and offerings related to professional certification, as well as the services and accommodations it provides to the public.

86.     Plaintiffs are adequate class representatives. They seek injunctive and declaratory relief that will benefit all members of the proposed class and subclass, and their interests are neither antagonistic to, nor in conflict with, the interests of the proposed class and subclass as a whole.

87.     The attorneys representing the proposed class and subclass are experienced in disability law and in class action litigation. Plaintiffs' counsel is qualified to fully prosecute this litigation and possesses adequate resources to see this matter through to a resolution.

88.     Defendant has acted and/or failed to act on grounds generally applicable to the proposed class and subclass as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class and subclass as a whole.

## FIRST CAUSE OF ACTION, ON BEHALF OF THE ADA CLASS
### *Violation of Title III of the Americans with Disabilities Act*
### *42 U.S.C. § 12182, et seq.*

89.     Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

90.     Title III of the ADA ("Title III") and its implementing regulations entitle individuals with disabilities to full and equal enjoyment of the goods, services, facilities,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C.

2    § 12182(a); 28 C.F.R. § 36.201(a).

3        91.    Plaintiffs and members of the proposed ADA Class are individuals who are Deaf,

4    and thus were and are qualified individuals with disabilities within the meaning of the ADA. 42

5    U.S.C. § 12102.

6        92.    SHRM is a private entity within the meaning of the ADA.  42 U.S.C. § 12181(6).

7        93.    SHRM is a "person that offers examinations or courses related to . . . certification,

8    or credentialing for . . .  professional . . . purposes" within the meaning of the ADA. 42 U.S.C.

9    § 12189.

10       94.    SHRM is a place of public accommodation in the form of a "service

11   establishment" that "affect[s] commerce" within the meaning of 42 U.S.C. § 12181(7)(f).

12       95.    In addition, SHRM "leases . . . or operates a place of public accommodation" by

13   holding conferences and in-person programming at hotels and conference venues around the

14   United States. 42 U.S.C. §§ 12181-12182.

15       96.    By failing to provide effective communication, including through the failure to

16   provide auxiliary aids and services, SHRM fails to provide d/Deaf persons with equal access to

17   its courses and offerings related to professional certification, as well as to the other services and

18   accommodations it provides to the public, in violation of Title III. 42 U.S.C.

19   § 12182(b)(2)(A)(iii); 36 C.F.R. § 36.303(a), (b)(1).

20       97.    SHRM has violated Title III by failing to "offer . . . examinations or courses" for

21   professional certification "in a place and manner accessible to persons with disabilities or offer

22   alternative accessible arrangements for such individuals." 42 U.S.C. § 12189; 28 C.F.R. §

23   36.309.

24       98.    SHRM has also failed to reasonably modify its policies and practices where

25   necessary to ensure that d/Deaf persons have full and equal access to its services, in violation of

26   Title III. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302.

27       99.    SHRM's conduct constitutes an ongoing and continuous violation of Title III, and

28   unless restrained from doing so, SHRM will continue to violate the ADA. This conduct, unless

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    enjoined, will continue to inflict injuries for which Plaintiffs and members of the proposed class

2    have no adequate remedy at law. Consequently, Plaintiffs and members of the proposed ADA

3    Class are entitled to injunctive relief pursuant to section 308 of the ADA, 42 U.S.C. § 12188(a),

4    as well as reasonable attorneys' fees and costs, 42 U.S.C. § 12205.

5         100.    WHEREFORE, Plaintiffs and members of the proposed ADA Class request relief

6    as set forth below.

7    **SECOND CAUSE OF ACTION, ON BEHALF OF THE UNRUH SUBCLASS**

8    ***Violation of the Unruh Civil Rights Act***
     ***California Civil Code § 51, et seq.***

9         101.    Plaintiffs incorporate by reference the foregoing allegations as if set forth fully

10   herein.

11        102.    The California Unruh Civil Rights Act ("Unruh Act") provides that all persons in

12   California are free and equal, and no matter their disability, are entitled to full and equal

13   accommodations, advantages, facilities, privileges, or services in all business establishments of

14   every kind whatsoever. Cal. Civ. Code § 51(b).

15        103.    As persons who are d/Deaf, Plaintiffs Ruffa and Canfield and members of the

16   proposed Unruh Subclass are persons with disabilities within the meaning of the Unruh Act. Cal.

17   Civ. Code § 51(e)(1).

18        104.    SHRM is a business establishment within the jurisdiction of the state of

19   California, and as such is obligated to comply with the provisions of the Unruh Act. Cal. Civ.

20   Code §51, *et seq.*

21        105.    Defendant has violated the Unruh Act by intentionally excluding individuals who

22   are d/Deaf from fully and equally enjoying their accommodations, advantages, facilities,

23   privileges, and services. Defendant has been on notice of its failure to provide persons who are

24   d/Deaf with full and equal access to its accommodations, advantages, facilities, privileges, or

25   services and continue to fail to provide such persons with full and equal access.

26        106.    The Unruh Act also provides, *inter alia*, that a violation of the ADA shall also

27   constitute a violation of the Unruh Act. Cal. Civ. Code § 51(f).

28

107.   SHRM's discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act.

108.   Defendant's actions have violated and continue to violate the Unruh Act, and therefore Plaintiffs Ruffa and Canfield and members of the proposed Unruh Subclass are entitled to injunctive relief to remedy the discrimination, as well as reasonable attorneys' fees. Cal. Civ. Code § 52.

109.   WHEREFORE, Plaintiffs and members of the proposed Unruh Subclass request relief as set forth below.

## THIRD CAUSE OF ACTION, ON BEHALF OF THE ADA CLASS AND UNRUH SUBCLASS
### *Declaratory Relief*

110.   Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

111.   An actual controversy has arisen and now exists between the parties in that Plaintiffs and members of the proposed class and subclass contend, are informed, and believe that SHRM is violating Title III of the ADA and related state laws by excluding individuals who are Deaf from full and equal access to its services and accommodations.

112.   A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

113.   WHEREFORE, Plaintiffs and members of the proposed class and subclass request relief as set forth below.

## ADDITIONAL CLAIMS OF NAMED PLAINTIFFS RUFFA AND CANFIELD

114.   Named Plaintiffs Tiffany Ruffa and Kathryn Canfield incorporate, by reference herein, the allegations and causes of action in paragraphs 1 through 113, inclusive.

115.   Named Plaintiffs Ruffa and Canfield are additionally entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense each individual has and continues to experience in violation of the Unruh Act. Cal. Civ. Code § 52(b).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DocuSign Envelope ID: 9778F199-7C04-4393-8D72-A3055FD9C4C1

116.     WHEREFORE, Named Plaintiffs Ruffa and Canfield pray for relief as set forth below.

### REQUEST FOR RELIEF

117.     WHEREFORE, Plaintiffs and members of the proposed ADA Class and Unruh Subclass request relief for Defendant's violations of Title III and the Unruh Act as follows:

a)     An order certifying this case as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2), appointing Named Plaintiffs as class representatives of the ADA Class, appointing Tiffany Ruffa and Kathryn Canfield as class representatives of the Unruh Subclass, and appointing Named Plaintiffs' attorneys as class counsel.

b)     A declaration that Defendant's conduct as alleged herein has violated and continues to violate Title III of the ADA and the Unruh Act.

c)     An order enjoining Defendant and its affiliates, subsidiaries, employees, agents, and all other persons acting on its control from violating Title III of the ADA and the Unruh Act.

d)     A permanent injunction pursuant to the ADA and the Unruh Act requiring Defendant to ensure that its services and accommodations are made and maintained accessible to individuals who are d/Deaf.

e)     Damages for Named Plaintiffs Ruffa and Canfield under the Unruh Act.

f)     An award of Plaintiffs' attorneys' fees and costs, as provided by statute.

g)     Such other and further relief as the Court deems just and proper.

DATED:  July 20, 2021               Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

Meredith J. Weaver
*Attorney for Plaintiffs*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Pursuant to California Civil Code § 52(c)(1):

2  *Tiffany Ruffa*                    7/20/2021
   ┗ 5D3FE5AE02C6440...

3  Tiffany Ruffa                      Date

4  [signature]

5  ┗ A50AD7FB9C014C1...

6  Kathryn Canfield                   Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
(510) 665-8644