CONFIDENTIAL SETTLEMENT COMMUNICATION

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Tiffany Ruffa, Kathryn Canfield, and Isidore Niyongabo ("Plaintiffs") and the Society for Human Resource Management, an Ohio nonprofit corporation with its principal address at 1800 Duke St., Alexandria, Virginia 22314 ("SHRM" or "Defendant"). For the purposes of this Agreement, Plaintiffs and Defendant are each referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

A.  On July 20, 2021, Plaintiffs filed a complaint against Defendant in the U.S. District Court for the Northern District of California, captioned as *Ruffa et al. v. Society for Human Resource Management*, Case No. 4:21-cv-05549-DMR (the "Action"). The Action asserted certain legal claims against Defendant under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12181 *et seq.* ("ADA"), and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.* ("the Unruh Act"), in connection with Defendant's alleged failure to provide d/Deaf individuals with full and equal access to Defendant's resources and services.

B.  Defendant disputes the claims and allegations set forth in the Action, and it has denied and continues to deny that it has any liability to Plaintiffs or any third party for any such claims asserted as of the Effective Date or otherwise.

C.  The Parties desire to avoid the risk, uncertainty, inconvenience, and expense of further litigation and have therefore agreed to fully and fairly settle any and all claims asserted by Plaintiffs in the Action, or that could have been asserted in the Action based on the facts alleged therein, under the ADA, the Unruh Act, the Disabled Persons Act, and/or under any and all laws of similar import prohibiting discrimination on the basis of disability in public accommodations or business establishments (the "Disability Laws"), as set forth under the terms in this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing Recitals, and the mutual promises, covenants, and undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.  **Incorporation of Recitals**. The Recitals above are incorporated herein by reference.

2.  **Definitions**

(a)  "Automated Speech Recognition ("ASR") Caption(s)" or "ASR Captioning" means to overlay or externally embed synchronized visual text for speech using automatic speech recognition ("ASR") technology or other means designed to capture the content of verbal speech in a manner consistent with ASR industry standards regarding synchronicity, completeness, and proper placement.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(b) "CART" means Computer-Assisted Real-time Transcription, a service in which a transcriptionist provides live captioning in real-time during an event.

(c) "Effective Date" means the date of last execution by all Parties.

(d) "Large Conferences" shall mean the (1) SHRM Annual Conference & Expo, (2) SHRM Employment Law & Compliance Conference, (3) SHRM Talent Conference & Expo, (4) SHRM Workplace Policy Conference, and (5) SHRM INCLUSION Conference.

(e) "Large Online Live Events" shall mean the general sessions on the conference's main stage at Large Conferences that SHRM live-streams online on its Website for virtual conference attendees.

(f) "Live Instructor-Led Online Programs" shall mean the digital audio or video portions of (1) SHRM Cert Prep Webinars and (2) SHRM Educational Programs made available by registration on the SHRM Website.

(g) "Online Content" shall mean the digital audio or video portions of (1) SHRM eLearning Modules, (2) SHRM Learning System, (3) SHRM On-Demand, (4) SHRM Podcasts, (5) SHRM Tune-in-Tuesdays, (6) SHRM People Manager Qualification, and (7) SHRM Webcasts made available on the SHRM Website.

(h) "Semi-live" means Online Content that is broadcast within six (6) business days of its recording.

(i) "SHRM" means the Society for Human Resource Management, the named Defendant in the Action. For purposes of this Agreement, "SHRM" does not include SHRM Chapters, which are distinct legal entities from SHRM, over which SHRM has no direct control.

(j) "SHRM Cert Prep Webinars" means the video content available through https://store.shrm.org/education/shrm-cert-prep-webinars or any successor URL.

(k) "SHRM Educational Programs" means the video content available through https://store.shrm.org/education/educational-programs or any successor URL.

(l) "SHRM eLearning Modules" means the educational modules available through https://store.shrm.org/education/elearning or any successor URL.

(m) "SHRM Learning System" means the SHRM-CP/SHRM-SCP certification preparation program provided and maintained by SHRM, available through https://store.shrm.org/certification/learning-system or any successor URL.

(n) "SHRM On-Demand" means the video content listed on the "SHRM On Demand Catalog", available through https://www.shrm.org/LearningAndCareer/learning/Pages/SHRM-eLearning.aspx or any successor URL.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(o)     "SHRM People Manager Qualification" means the educational modules available through https://store.shrm.org/SHRM-People-Manager-Qualification-PMQ or any successor URL.

(p)     "SHRM Podcasts" means the audio-only podcasts available through https://www.shrm.org/hr-today/news/pages/podcasts.aspx or any successor URL.

(q)     "SHRM Tune-in-Tuesdays" means the video content available through https://tuneintuesdays.shrm.org/ or any successor URL.

(r)     "SHRM Webcasts" means the video content available through https://www.shrm.org/learningandcareer/learning/webcasts/pages/default.aspx or any successor URL.

(s)     "SHRM Website" or the "Website" means the member-facing and public-facing portions of the website and online store maintained by SHRM, at https://www.shrm.org/ and https://www.store.shrm.org/ or any successor URLs.

(t)     "Sign Language Interpretation" means a service in which a trained individual interprets between a spoken and a signed language.  The signed language may include, but is not necessarily limited to, American Sign Language ("ASL").

(u)     "Transcript(s)" means a text version of the speech and non-speech audio information needed to understand the program content including speaker identification to the extent feasible under industry standards.  The text is presented in a clear and legible manner.  Where applicable, Transcripts can be created based on the embedded CART, WCAG Captions, or ASR Captions.

(v)     "WCAG Caption(s)" or "WCAG Captioning" means: to overlay or externally embed synchronized visual text for speech, consistent with the Web Content Accessibility Guidelines ("WCAG") 2.1 level AA, at an accuracy rate equal to that offered by a vendor captioning service and in a manner consistent with industry standards regarding synchronicity, completeness, and proper placement.

3.      **SHRM Chapters**

(a)     Within fifteen (15) business days of the Effective Date, SHRM shall send a letter to all SHRM Chapters reminding them of their obligation to comply with applicable disability accommodation and accessibility laws, which may include the provision of auxiliary aids and services free of charge pursuant to 28 C.F.R. § 36.303.

(b)     Within thirty (30) days of the Effective Date, to the extent SHRM provides SHRM-produced audio-visual content to the SHRM Chapters for public use by those chapters, other than as accessed and/or available through the SHRM Website, SHRM will provide such content with WCAG Captions; to the extent such content is audio only, such as a podcast, SHRM will provide Transcripts in lieu of captioning.

(c)     Content created by SHRM Chapters which is made available on the SHRM Website will be treated consistently with other content available on the SHRM Website per Sections 4–6.

CONFIDENTIAL SETTLEMENT COMMUNICATION

4. **New Online Content**

Within thirty (30) days of the Effective Date, SHRM will develop and implement a plan to improve the accessibility of Online Content on the SHRM Website, as follows:

(a)     *Live and Semi-live Broadcasts of Online Content*:  SHRM shall ensure that ASR Captioning is provided for all new live and Semi-live video broadcasts of Online Content, regardless of whether these services have been specifically requested by members and customers prior to the event.  Customers and members may nevertheless request other auxiliary aids or services for such events through SHRM's accommodation request process.  Availability of ASR Captioning should not be relied on as a justification for denying requests for additional or different necessary auxiliary aids and services.

(b)     *Subsequent Posting of Live Broadcasts*:  Other than content for which CART is already provided at the time of the original broadcast, within six (6) business days of posting SHRM shall ensure WCAG Captions are provided for the subsequent posting of live and Semi-live video broadcasts of Online Content and that the descriptions for such content will indicate that captions are provided.

(c)     *Pre-Recorded Content*:  SHRM shall ensure WCAG Captions are contemporaneously provided for the posting of all new non-live or Semi-live Online Content and that the descriptions for such content will indicate that captions are provided.

(d)     *Tune-in-Tuesdays*:  SHRM shall ensure that CART and a Transcript based on CART services are available for all new postings of SHRM's "Tune-in-Tuesdays" programs, and that the descriptions for such content will indicate that CART and Transcripts are provided, regardless of whether these services have been specifically requested by members or customers.  CART shall be provided at the time of broadcast; Transcripts shall be provided within six (6) business days of the posting of such new content.

(e)     *Podcasts*:  SHRM shall ensure that Transcripts are provided for all new postings of SHRM Podcasts, within six (6) business days of posting, and that the descriptions for such content will indicate that Transcripts are provided, regardless of whether these services have been specifically requested by members or customers.

5. **Prior Online Content**

(a)     *Scheduled Captioning*:  For Online Content that either (1) was first made available on the SHRM Website less than one year prior to the Effective Date and will continue to be available on the SHRM Website following the Effective Date, or (2) is first made available on the SHRM Website on the Effective Date or up until the 30th day after the Effective Date, or (3) is required for any credentials SHRM offers, SHRM shall add either WCAG Captions to the video components of such content or Transcripts for the audio-only content, such as Podcasts, and promptly modify the content description for such content to indicate that captions or Transcripts, as applicable, are available, according to the following schedule:

4

DocuSign Envelope ID: F533BACA-556B-46A8-A6B8-2E08CEFA990C
Case 4:21-cv-05349-DMR   Document 29-1   Filed 06/24/22   Page 5 of 16

CONFIDENTIAL SETTLEMENT COMMUNICATION

      (i)      50% of the content within six (6) months of the Effective Date; and

      (ii)     100% of the content within one (1) year of the Effective Date.

(b)    *Additional Captioning By Request*:  For Online Content that was first made available on the SHRM Website more than one year prior to the Effective Date and will continue to be available on the SHRM Website following the 30th day after the Effective Date, SHRM shall add WCAG Captions in response to requests for such accommodation, submitted through the designated accommodation request channel, within eight (8) business days of any such request; to the extent such content is audio only, such as a podcast, SHRM will provide Transcripts in lieu of captioning.

      (i)      In the event that SHRM receives a request by one individual for captions or transcripts for more than fifteen (15) hours of content, SHRM will work with the requesting party in good faith to evaluate the requested accommodations and develop a reasonable timeline for providing the requested accommodations.

      (ii)     In the event that SHRM believes a request or group of requests has not been submitted in good faith, SHRM will work with the requesting party(ies) to evaluate the request(s) and develop a reasonable response.  If a Plaintiff has made a request that SHRM believes is not submitted in good faith, SHRM will also promptly notify Plaintiffs' Counsel, who will participate in such discussions.

(c)    *Tune-in-Tuesdays*:  Notwithstanding conflicting obligations set forth in this Section 5 for other Online Content, within sixty (60) days of the Effective Date, SHRM shall ensure that WCAG Captions are added for all prior postings of SHRM's "Tune-in-Tuesdays" programs.

6.    **Live Instructor-Led Online Programs**

(a)    Within thirty (30) days of the Effective Date, SHRM shall ensure that ASR Captioning is provided for all new Live Instructor-Led Online Programs, regardless of whether these services have been specifically requested by members and customers prior to the event.

(b)    Within thirty (30) days of the Effective Date, SHRM shall add a question to the registration form for all new Live Instructor-Led Online Programs for which registration is still open as of that date inquiring whether the registrant needs CART and/or Transcripts as an accommodation for a disability.  If a registrant indicates a need for CART and/or Transcripts in the registration form at least five (5) business days before the start of a new Live Instructor-Led Online Program, then CART and/or a subsequent Transcript based on CART, consistent with the registrant's request, will be provided to the registrant for all sessions of that program.

7.    **Large Conferences and Large Online Live Events**

    SHRM will develop and implement a plan to improve the accessibility of SHRM's live online and in-person events, as follows:

(a)    *Large Conferences*:  Within thirty (30) days of the Effective Date, SHRM shall ensure that ASL Interpretation and CART are available to all members and customers who attend the in-

person general sessions on the conference's main stage at Large Conferences, regardless of whether these services have been specifically requested by members and customers prior to the event. For Large Conferences, SHRM shall also ensure that Sign Language Interpretation teams are available to provide interpretation for in-person attendees at any breakout sessions and other conference sessions that a d/Deaf conference attendee wishes to join, provided such an accommodation is requested at least seven (7) calendar days in advance of the beginning of the Large Conference.

(b) *Large Online Live Events*: Within sixty (60) days of the Effective Date, SHRM shall ensure that CART is available for Large Online Live Events, regardless of whether these services have been specifically requested by members and customers prior to the event.

8. **Policies Regarding Reasonable Accommodations**

(a) *Accommodation Requests*: Within thirty (30) days of the Effective Date, SHRM shall ensure that, prior to registration, all members and customers have access to information on the SHRM Website, which shall be accessible through a link on the homepage of the Website, regarding the availability of reasonable accommodations for all programming, which may include but are not limited to Captioning, CART, Transcripts, and Sign Language Interpretation; and the process, instructions, and deadlines for making requests for accommodations through the designated accommodation request process. Nothing in this Agreement shall require SHRM to grant requests for accommodations that would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

(b) *Notice of Automatically Provided Accommodations*: Within thirty (30) days of the Effective Date, SHRM shall ensure that, prior to payment, all members and customers have meaningful access to information, which shall, at minimum, be accessible through a link on the homepage of the Website, regarding the automatic provision of ASR Captions, ASL Interpretation, CART, WCAG Captions, and/or Transcripts for Online Content, Live Instructor-Led Online Programs, Large Conferences, and Large Online Live Events, regardless of whether these services have been specifically requested by members and customers, as outlined in Sections 4–7 of this Agreement.

(c) *Professional Development Credits*: If a SHRM member who relies on Transcripts is seeking Professional Development Credits for attending an event or program for which SHRM has agreed to provide such Transcripts, then the thirty (30) day timeline to request those Professional Development Credits will begin on the date they receive such Transcripts. In the public-facing portion of SHRM's Accommodation Policy, SHRM will inform members and customers that they may request this extension.

(d) *Accommodations Policy*: Within sixty (60) days of the Effective Date and after considering timely input from Plaintiffs, SHRM shall develop and implement an effective communication and disability accommodations policy ("Accommodations Policy"), that specifically covers accommodations for people who are d/Deaf or hard of hearing. The Accommodations Policy shall:

CONFIDENTIAL SETTLEMENT COMMUNICATION

(i) specify that when SHRM provides a reasonable accommodation in the form of auxiliary aids and services to ensure effective communication, such aids and services shall be provided free of charge to its members and customers;

(ii) set out the designated process for requesting reasonable accommodations, including a standard point of contact to which all such requests may be made;

(iii) set out the process SHRM will use in responding to reasonable accommodation requests submitted through the designated request for accommodation process, including how requests and responses will be documented, and the following timelines for responding to such requests:

1. SHRM shall acknowledge receipt of all such requests within one (1) business day, and the acknowledgement may be auto-generated.

2. SHRM shall provide a substantive response to all such requests within five (5) business days, either confirming that SHRM is granting the requested accommodation and indicating when the requested accommodation will be available, or providing a status update regarding the accommodation request and an estimate of when SHRM expects to fully resolve the request.

3. When SHRM provides Transcripts as an accommodation, if the requested accommodation is for Online Content that already has WCAG Captions, the Transcript will be provided within six (6) business days of request receipt. SHRM may require the registrant to attest that they will not share the Transcript(s) with other individuals prior to providing such transcripts.

4. With respect to live online or in-person events, SHRM shall make reasonable efforts to provide reasonable accommodations that are requested at least seven (7) calendar days prior to the event. SHRM shall make good faith efforts to provide reasonable accommodations that are requested less than seven (7) calendar days in advance of an event.

5. With respect to Online Content, SHRM shall follow the timelines set forth in Sections 4 and 5 of this Agreement.

6. With respect to Live Instructor-Led Online Programs, SHRM shall follow the timelines set forth in Section 6 of this Agreement.

(iv) designate a position(s) responsible for implementing a process through which members and customers who are denied accommodation requests are able to request a refund for events and/or SHRM membership for consideration by SHRM; and

(v) identify a trained individual or position(s) responsible for overseeing implementation of the Accommodations Policy.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(e)     *Publication of Accommodations Policy*:  Once developed and implemented, SHRM shall publicize the public facing portions of the Accommodations Policy in a prominent and easy-to-find place on the SHRM Website, the location of which shall be reviewed and agreed to by Plaintiffs.  The public facing portions of the Accommodations Policy shall include a general explanation of SHRM's accessibility efforts, the designated process for requesting accommodations, the designated process for requesting refunds (in the event accommodations are denied), and the contact information for the person(s) or position(s) within SHRM handling accommodation inquiries or complaints.  SHRM shall also include information about the Accommodations Policy in its "Membership FAQ" Website page.  SHRM shall make reasonable efforts to ensure that it uses standard language in all forums where it communicates publicly about its Accommodations Policy.

9.    **Training**

(a)     Within six (6) months of the Effective Date, SHRM shall hire a mutually agreeable outside consultant company to develop an annual training for those employees who are responsible for administering SHRM's Accommodations Policy and/or responding to requests for accommodation.  This training should encompass the values, behaviors, social customs, and traditions of Deaf individuals, which center on the use of signed language and unity with other Deaf individuals (also known as "Deaf Culture").  This training will explain the different types of accommodations that d/Deaf members or potential members may request in order to access different types of SHRM content and programming; including Sign Language Interpreters, WCAG Captioning, ASR Captioning, Transcription, note-taking, and other potential accommodations as appropriate.

(b)     Within seven (7) months of the Effective Date, and if the outside consultant approves and provides the materials in a timely manner, SHRM shall provide a copy of the example training materials to be used as part of this annual training to Plaintiffs' Counsel.  Within two (2) weeks of receipt, Plaintiffs' Counsel will provide any feedback and recommendations to SHRM.  Within three (3) weeks of receipt, SHRM shall provide Plaintiffs an updated draft of the training materials and explanation of any suggestions that were not incorporated.  If the outside consultant is resistant to this process or does not provide SHRM with the proposed training materials in a timely manner, SHRM's Counsel shall promptly notify Plaintiffs' Counsel of the issues and the Parties will work together in good faith on an appropriate resolution.

(c)     SHRM shall provide the training contemplated by this Section 9 of the Agreement within nine (9) months of the Effective Date.

10.   **Monetary Consideration, Attorneys' Fees and Costs**

(a)     *Settlement Payments to Plaintiffs*:

(i)    In full and final compromise of Plaintiffs' Released Claims, SHRM agrees to provide the following compensation to each of the individual Plaintiffs (hereinafter the "Settlement Payments"):

(1)    to Ms. Canfield, a payment of $16,000;

CONFIDENTIAL SETTLEMENT COMMUNICATION

        (2)       to Ms. Ruffa, a payment of $16,000; and

        (3)       to Mr. Niyongabo, a payment of $4,500.

(ii)       The Settlement Payments shall be made in the form of checks payable to each Plaintiff individually. Such checks shall be sent by either UPS or FedEx Overnight Delivery with tracking capabilities to each Plaintiff at an address to be provided separately by Plaintiffs' Counsel to SHRM's Counsel and shall be postmarked no later than thirty (30) days after the Effective Date, provided Ms. Canfield, Ms. Ruffa, and Mr. Niyongabo have each first timely provided SHRM with a complete and current W-9.

(iii)      The Settlement Payments represent alleged non-wage damages, which shall not be subject to withholding, and for which entire amount SHRM shall issue a Form 1099 or similar form required by state or federal taxing authorities to each Plaintiff as well as to federal and state taxing authorities. Plaintiffs shall be solely responsible for federal, state and local taxes due on their respective Settlement Payment, if any.

(b)      *Attorneys' Fees and Costs Settlement Payment*:

(i)       In full and complete compromise of any and all claims for attorneys' fees, expenses, or costs relating to this Action, SHRM agrees to pay Plaintiffs' Counsel, Disability Rights Advocates, a total of $185,000 (hereinafter the "Attorneys Fee Settlement Payment"). The Attorneys Fee Settlement Payment is due thirty (30) days after the Effective Date of the Agreement and must be paid by EFT or wire transfer according to the payment preferences separately provided to SHRM's counsel. Disability Rights Advocates will timely provide SHRM's counsel with a complete and current W-9 along with bank account information sufficient to enable SHRM to process the Attorneys Fee Settlement Payment. SHRM shall issue a Form 1099 or similar form required by state or federal taxing authorities for the full amount to Disability Rights Advocates according to the information provided in the W-9, as well as to federal and state taxing authorities.

(ii)      All Parties expressly acknowledge and agree that the Attorneys Fee Settlement Payment constitutes payment in full in compromise for all claims for reasonable attorneys' fees, costs, and expenses related to this Action, including anticipated Monitoring Fees and Costs (for work that is necessary for Plaintiffs' Counsel to undertake in order to implement the settlement agreement), which are paid to Plaintiff's Counsel in lieu of statutory fees that might otherwise be recovered under the ADA or the Unruh Civil Rights Act, but does not include fees and costs that may be sought and awarded by a Court under Section 13(c)(ii), if the Court were to determine such fees and costs are recoverable. Plaintiffs and/or Plaintiffs' Counsel, as applicable, shall be solely responsible for federal, state and local taxes due on the Attorneys Fee Settlement Payment.

(iii)      Except as expressly provided for herein, each Party shall bear its own attorneys' fees, costs and expenses incurred in relation to this Action and the Released Claims.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(c)     Plaintiffs confirm and stipulate that their claims in this Action do not involve any illness, injury, incident, or accident specifically for which medical expenses were, or are expected to be, incurred as a result of any act by SHRM, including but not limited to claims for emotional distress.

11.     **Monitoring**

(a)     *Written Status Updates*:  Six (6) months after the Effective Date, twelve (12) months after the Effective Date, and eighteen (18) months after the Effective Date, SHRM will advise Plaintiffs' Counsel in writing regarding the status of its efforts to comply with this Agreement, including: (i) a list of Online Content for which WCAG Captions and/or Transcripts were added; (ii) an explanation of other accessibility improvements undertaken in response to this Agreement; (iii) an anonymized list of individual requests for accommodation by members or customers who are d/Deaf that were directed to SHRM during the relevant timeframe and SHRM's response and follow-up taken, if any; and (iv) any difficulties encountered in implementing the terms of this Agreement within the timeframes specified, including any instances in which SHRM has been unable to meet timelines set forth in this Agreement due to a third-party vendor's failure to provide ordered WCAG Captions or Transcripts in a timely manner.

(b)     *Status Teleconferences*:  After the submission of the written status updates described in Section 11(a), upon Plaintiffs' Counsel's request, SHRM (or SHRM's Counsel) and Plaintiffs (or Plaintiffs' Counsel) will hold a teleconference at a mutually convenient time to discuss any questions or concerns Plaintiffs may have based on the update.  Such requests will be made via email to the individuals identified for the purpose of notice at Section 15(i).

12.     **General Release**

(a)     Upon execution of this Agreement, the Parties, on their own behalf, and on behalf of their grantees, agents, representatives, heirs, devisees, trustees, assigns, assignors, attorneys, or any other entities in which the Parties have an interest (collectively, the "Releasing Parties"), hereby agree to forever and finally release and discharge, the other Party and their past and present agents, employees, representatives, officers, directors, shareholders, attorneys, accountants, insurers, receivers, advisors, consultants, partners, partnerships, parents, divisions, subsidiaries, affiliates, assigns, agents, independent contractors, successors, heirs, predecessors in interest, joint ventures, and commonly controlled corporations (collectively, the "Released Parties") from all liabilities, causes of action, charges, complaints, suits, claims, obligations, costs, losses, damages, rights, judgments, attorneys' fees, expenses, bonds, bills, penalties, fines, and all other legal responsibilities of any form whatsoever, whether known or unknown, whether presently existing or arising in the future, whether suspected or unsuspected, whether fixed or contingent, including those arising under any theory of law, whether common, constitutional, statutory, or other of any jurisdiction, foreign or domestic, whether in law or in equity, which the Releasing Parties had or may claim to have against any Released Party arising out of or relating to: (i) accessibility issues regarding Defendant's Website prior to the Effective Date, the subject matter of this Agreement, and/or the Action; and (ii) any costs, attorneys' fees, expert fees, consultant fees, or any expenses incurred by the Releasing Parties in connection with the subject

DocuSign Envelope ID: F533BACA-556B-46A8-A6D8-2E08CEFA990C

CONFIDENTIAL SETTLEMENT COMMUNICATION

matter hereof prior to the Effective Date (collectively, the "Released Claims"). SHRM Chapters are specifically excluded from incorporation as "Released Parties".

(b) Plaintiffs hereby expressly and knowingly waive and relinquish any and all rights that they each have or might have relating to the Released Claims under California Civil Code § 1542 (and under any and all other statutes or common law principles of similar effect) which reads as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

(c) Plaintiffs represent and warrant that: (i) each of them own the Released Claims; (ii) no other person or entity has any interest in the Released Claims; (iii) they have not sold, assigned, conveyed or otherwise transferred any Released Claim or demand against Defendant, or any Released Claim or demand against any of the other Released Parties; and (iv) each of them have the sole and exclusive right to settle and release such Released Claims.

13. **Dispute Resolution and Enforcement**

(a) Within fifteen (15) business days of the Effective Date, the Parties shall jointly file a Notice of Settlement and Stipulation for Voluntary Dismissal of the Action.

(b) The Parties agree that Magistrate Judge Donna M. Ryu of the U.S. District Court for the Northern District of California shall maintain jurisdiction of this case for purpose of enforcing this Settlement Agreement, including the resolution of any disputes that arise hereunder, for the Term of this Agreement. Should Magistrate Judge Ryu become unavailable, the Parties agree to accept the jurisdiction of any other Judge assigned by the U.S. District Court for the Northern District of California for continuing jurisdiction purposes, subject to the Parties' normal rights to object to a judicial assignment under the Federal Rules of Civil Procedure.

(c) If any disputes arise as to compliance with this Agreement during the Term of the Agreement, the Parties agree to resolve the disputes exclusively via the following two (2) steps:

> (i) **Step One – Notice, Conference, & Optional Mediation:** Plaintiffs' Counsel will send a letter to SHRM's Counsel concerning any dispute, and the Parties will meet and confer in a good faith effort to resolve any dispute. The Parties shall make all reasonable attempts to conduct the conference within thirty (30) days of receipt of the letter raising the dispute, or at a later date if mutually agreed by the Parties.
>
> In the event the Parties are unable to resolve their dispute through the foregoing conference process and agree that mediation would be worthwhile to resolve the dispute, the dispute may be submitted to mediation with a mutually agreeable mediator, and the parties agree to split the costs of mediation. If the Parties cannot agree on a mediator and schedule mediation within four (4) weeks (or a longer number of days mutually agreed in

DocuSign Envelope ID: F533BACA-556B-46A8-A6D8-2E08CEE5A990C
Case 4:21-cv-05549-DMR Document 29-1 Filed 06/24/22 Page 12 of 16

CONFIDENTIAL SETTLEMENT COMMUNICATION

writing) after the first mediator is proposed, then either Party may request that the U.S. District Court for the Northern District of California assign a mediator.

(ii) **Step Two – Resolution by District Court:** In the event that the Parties are unable to resolve a dispute through Step One within thirty (30) days of the conclusion of the conference held to meet and confer about the dispute, or if the Parties engage in a voluntary mediation then within thirty (30) days from the conclusion of that mediation, the Party, or Parties, alleging non-compliance with the Agreement may submit the dispute for binding resolution by the Federal District Court for the Northern District of California under the Court's continuing jurisdiction over this case pursuant to Section 13(b). Attorneys' fees and costs in connection with the proceedings under this Step Two shall only be recoverable to the extent available under applicable law.

(d) Plaintiffs will not pursue dispute resolutions based upon discrete or limited instances in which SHRM is unable to comply with timelines set forth in this Agreement due to a third-party vendor's failure to provide WCAG Captions or Transcripts in a timely manner, outside of SHRM's control. However, Plaintiffs reserve the right to pursue dispute resolutions in the event that SHRM is consistently unable to comply with timelines set forth in this Agreement.

14. **Term of the Settlement Agreement**

The Agreement shall have effect from the Effective Date and shall continue in force for a period of two (2) years ("Term of the Agreement"), with the exception of the release of claims set forth in Section 12 of this Agreement, which Section shall survive the expiration of the Term of the Agreement.

15. **Miscellaneous Terms**

(a) *Entire Agreement*. This Agreement contains the entire agreement of the Parties concerning the subject matter of this Agreement and supersedes any and all prior and contemporaneous written or oral representations, agreements, arrangements or understandings among them concerning such subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, among the Parties relating to the subject matter of this Agreement that are not fully expressed herein.

(b) *Governing Law*. This Agreement shall be governed by and interpreted and construed pursuant to the laws of the State of California, without giving effect to any conflicts of law principles.

(c) *Amendment and Modification*. This Agreement may not be waived, altered, amended, or repealed, in whole or in part, except upon written agreement executed by the Parties, wherein specific reference is made to this Agreement.

(d) *Power and Authority*. Each of the signatories to this Agreement represents and warrants that they are duly and fully authorized to act for the Party on whose behalf they sign this Agreement and that any and all required consents, authorizations, or approvals have been obtained by or on behalf of such Party.

CONFIDENTIAL SETTLEMENT COMMUNICATION

(e) *Investigation*. Each of the Parties has made such investigation of the facts pertaining to this Agreement as it deems necessary. The Parties understand that if any fact with respect to any matter covered by this Agreement is found hereafter to be in addition to, other than, or different from, the facts now believed by the Parties to be true, each Party expressly accepts and assumes the risk of such possible additional or different facts and agrees that this Agreement shall be and remain effective notwithstanding such additional or different facts.

(f) *Consultation With Counsel*. The Parties represent and warrant that they have presented their respective counsel with this Agreement, that their respective counsel have had the opportunity to review this Agreement and that they are executing this Agreement of their own free will after having received advice from their respective counsel regarding execution of this Agreement.

(g) *Multiple Counterparts*. This Agreement may be executed in counterparts including via electronic or digital signature. Each counterpart may be executed and delivered via facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document and shall be effective and binding on the Parties as of the Effective Date. Each such counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Agreement. If the Agreement is signed by the Parties on different dates, the Effective Date for all purposes shall be measured from the latest date of the final signature.

(h) *Preparation and Construction*. Each Party hereto has cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the same shall not be construed against any Party on the ground that said Party drafted this Agreement. The Parties further agree that all provisions of this Agreement shall be construed as a whole, according to the fair meaning of the language used.

(i) *Notice*. All notices required under this Agreement, including any written notice of an issue, concern, and/or dispute regarding the Parties' respective obligations under this Agreement, shall be served on the Parties via email and certified First Class U.S. Mail return receipt requested or a recognized overnight courier service with tracking capabilities, as follows:

**NOTICE TO DEFENDANT:**

Ms. Kristina Azlin, Esq.  
Mr. Thomas Hill, Esq.  
Holland & Knight LLP  
400 South Hope Street, 8th Floor  
Los Angeles, California 90071  
Email: Kristina.azlin@hklaw.com,  
       Thomas.hill@hklaw.com

Mr. James L. Banks, Jr.  
Society for Human Resource Management  
1800 Duke Street  
Alexandria, VA 22314  
Email: James.banks@shrm.org

**NOTICE TO PLAINTIFFS:**

Rebecca Williford, Esq.  
Disability Rights Advocates  
2001 Center Street, 4th Floor  
Berkeley, CA 94704  
Email: rwilliford@dralegal.org

CONFIDENTIAL SETTLEMENT COMMUNICATION

(j)     *Severability*.  If any one or more of the provisions of this Agreement should be ruled wholly or partly invalid or unenforceable by a court or other government body of competent jurisdiction, then: (i) the validity and enforceability of all provisions of this Agreement not ruled to be invalid or unenforceable shall be unaffected; (ii) the effect of the ruling shall be limited to the jurisdiction of the court or other government body making the ruling; (iii) the provision(s) held wholly or partly invalid or unenforceable shall be deemed amended, and the court or other government body is authorized to reform the provision(s), to the minimum extent necessary to render them valid and enforceable in conformity with the Parties' intent as manifested herein; and (iv) if the ruling and/or the controlling principle of law or equity leading to the ruling is subsequently overruled, modified, or amended by legislative, judicial, or administrative action, then the provision(s) in question as originally set forth in this Agreement shall be deemed valid and enforceable to the maximum extent permitted by the new controlling principle of law or equity.

(k)     *No Admission of Liability*.  It is understood and agreed that this Agreement and the performance by any Party of its obligations herein, including the payment of the Settlement Payments or any other actions taken by Defendant, are for the sole purpose of compromising the Released Claims, and that this Agreement shall not be deemed or construed as an admission of liability or fault by Defendant, with liability and fault being expressly denied by Defendant.

(l)     *Successors and Assigns*.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and to their respective heirs, representatives, successors, and assigns.

(m)     *Force Majeure*.  If Defendant's ability to comply with the terms of this Agreement is delayed by force majeure, such as fires, accidents, earthquakes, hurricanes, epidemics/pandemics, blizzards, explosions, floods, wars, terrorism, riots or sabotage, or any other similar circumstances that are wholly outside of Defendant's control, such delay shall not constitute a breach of this Agreement.  Defendant will promptly notify Plaintiffs if they become aware of a force majeure that may or will significantly delay performance under this Agreement.  If a force majeure occurs, the Parties will meet and confer to determine whether modifications to the Agreement are necessary.

*[Remainder of Page Intentionally Left Blank – Signature Page Follows]*

CONFIDENTIAL SETTLEMENT COMMUNICATION

IN WITNESS HEREOF the undersigned Parties do hereby execute this Agreement:

**TIFFANY RUFFA ("PLAINTIFF")**

*Tiffany Ruffa*

By: Tiffany Ruffa, in her individual capacity

Date: June 23, 2022


**KATHRYN CANFIELD ("PLAINTIFF")**

*[signature]*

By: Kathryn Canfield, in her individual capacity

Date: June 23, 2022


**ISIDORE NIYONGABO ("PLAINTIFF")**

*[signature]*

By: Isidore Niyongabo, in his individual capacity

Date: June 23, 2022


**THE SOCIETY FOR HUMAN RESOURCE MANAGEMENT, an Ohio nonprofit corporation ("DEFENDANT")**

*James Banks*

By: James L. Banks, Jr.

Title: General Counsel

Date: June 23, 2022

15

CONFIDENTIAL SETTLEMENT COMMUNICATION

**APPROVED AS TO FORM:**

**DISABILITY RIGHTS ADVOCATES ("PLAINTIFFS' COUNSEL")**

*Rebecca Williford*

By: Rebecca Williford

Title: Acting President & CEO/Deputy Director of Litigation

Date: June 23, 2022


**HOLLAND & KNIGHT LLP ("DEFENDANT'S COUNSEL")**

*kristina azlin*

By: Kristina Azlin

Title: Partner

Date: June 23, 2022

16